UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SEURANINE PERSAD,

                            Petitioner,

          -against-

JAMES CONWAY, Warden, Attica Correctional
Facility,

                            Respondent.
------------------------------------------------------------------x

MEMORANDUM AND ORDER

05-CV-4199 (CBA) (SMG)

AMON, UNITED STATES DISTRICT JUDGE:

       Petitioner Seuranine Persad[1] filed a petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254, challenging a 2001 conviction in New York Supreme Court, Queens County, stemming from the shooting of Christopher Psyllos. The conviction is challenged on six grounds: (1) denial of his right to the counsel of his choice; (2) denial of his right to be present at side bar conferences; (3) denial of his right to present a defense; (4) prosecutorial misconduct in the summation; (5) prosecutor's use of false testimony; and (6) ineffective assistance of counsel. This Court referred the petition to the Honorable Steven M. Gold, United States Magistrate Judge for the Eastern District of New York, for a Report and Recommendation ("R&R"). On July 31, 2007, his R&R was issued, recommending denial of the petition as to all claims. After being granted extensions of time, Persad filed timely objections to the R&R on September 28, 2007. For the reasons stated herein, the Court adopts the R&R as to claims (1), (2), (4), (5), and (6) as the opinion of the Court, and adopts the ultimate conclusion of the Magistrate Judge as to

---

[1]Apparently the spelling of Persad's name is the subject of some uncertainty. The Court employs the spelling used by the Magistrate Judge in his Report and Recommendation.

1

claim (3), that the jury instructions did not violate Persad's right to due process.

I.  Discussion[2]

Persad only articulates objections with respect to that portion of the R&R which denies his petition on the ground that his right to present a defense was violated due to a defect in the trial judge's jury instructions. Accordingly, those portions of the R&R denying the petition as to all other grounds are hereby adopted without further discussion. The Court turns to Persad's claim regarding the jury instructions.

Two witnesses identified Persad at trial as the shooter, the victim, Psyllos, and a friend of the victim's, Thomas Kennedy. (R&R at 2-4, 26.) However, both Psyllos and Kennedy were shown photo arrays shortly after the shooting, and at that time neither had identified Persad as the shooter. (R&R at 2-4, 26.) Months later, but prior to trial, Psyllos was again shown a photo array, and this time identified Persad as the shooter. (R&R at 2-4, 26.) The court's instruction to the jury on the issue of identification recounted the evidence that Psyllos had previously identified Persad from a photo array and that Psyllos and Kennedy identified Persad as the shooter during the trial. (R&R at 27.) The court did not, however, refer to the evidence that both Psyllos and Kennedy failed to identify Persad from the photo arrays they viewed shortly after the shooting. (R&R at 27.) Put simply, the court reminded the jury of the identification evidence that was incriminating without mentioning that which was exculpatory.

A.  Standard of Review

---

[2]The Court refers the reader to the R&R for a comprehensive recitation of the pertinent background information regarding Persad's trial, conviction, and state court procedural history

2

The Court reviews Persad's objections to the Magistrate Judge's R&R *de novo*. Fed. R. Civ. P. 72(b). As he noted in the R&R, a federal court's review of a state court conviction is constrained by the standards set forth in the AEDPA. (R&R at 7-8.) More specifically, a federal court may not grant a writ of habeas corpus brought by a state prisoner unless the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Price v. Vincent, 538 U.S. 634, 639-40 (2003). Accordingly, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [federal law] incorrectly.'" Price, 538 U.S. at 641 (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Rather, a state court's decision is "contrary to" clearly established federal law "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Id. at 640 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Additionally, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. In the Second Circuit, "it is well-established ... that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotations omitted).

 B. Persad's Improper Jury Instruction Claim

With respect to the jury instruction claim, the Magistrate Judge ultimately concluded "that the trial judge's biased marshaling of the evidence, when considered in the context of the entire charge and trial record, did not so 'infect the entire trial' that Persad's conviction violates due process." (R&R at 33.) The Court agrees with this conclusion. However, the Court does not agree with some of the preceding analysis–namely, the Magistrate Judge's preliminary conclusion that "[t]he unbalanced instruction in Persad's case, which emphasized the government's identification evidence and made no reference to the evidence favoring the defense, ... violated clearly established federal law." (R&R at 32-33.)

Persad's objections assume the accuracy of this initial conclusion. First, he asks the Court "to give appropriate weight" to the Magistrate Judge's statement that unbalanced jury instructions violate clearly established federal law, and that the instructions at issue here give rise to a due process violation. (Objs. at 1.) He then objects to the Magistrate Judge's subsequent analysis of the jury instructions in the context of the case as a whole.[3] Specifically, he argues (1) that the Magistrate Judge's analysis and conclusion that the rest of the jury instructions regarding the identification evidence mitigated that portion which was erroneous was improper, (2) that his observation that the neglected identification evidence was discussed at length by defense counsel in his summation just prior to the jury instructions was improper, and (3) that his conclusion that the evidence introduced at trial rendered the erroneous jury charge

---

[3]Persad was right to notice some inconsistency here. If the Magistrate Judge had faithfully applied his incorrect statement of the law, it would seem that the consideration of the trial record beyond the erroneous instruction would have been precluded and his inquiry would have ended upon his finding that the instruction at issue did violate clearly established federal law. However, as will be shown below, despite stating the law incorrectly, the Magistrate Judge did apply to the correct law to the facts of this case–properly considering the instruction at issue in the context of the trial as a whole.

4

less than a due process violation was improper. (Objs. at 1-2.)

It is now well-settled law that an improper jury charge, even one not properly balanced, alone does not necessarily amount to a due process violation. "Before a federal court may overturn a conviction resulting from a state trial in which [an improper jury] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). An improper jury instruction alone does not necessarily amount to a constitutional error due to "the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Id. at 146-47 (citing Boyd v. United States, 271 U.S. 104, 107 (1926)). "While this does not mean that an instruction by itself may never rise to the level of constitutional error, it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." Id. at 147 (internal citation omitted); see also DelValle v. Armstrong, 306 F.3d 1197, 1200-01 (2d Cir. 2002). Accordingly, the relevant constitutional question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp). Because this inquiry requires an analysis of the jury instruction in the context of both the other jury instructions and the trial as a whole, there can be no bright line rule that all "unbalanced" jury charges necessarily violate due

process.

Although Cupp did make clear that the due process inquiry does not end with the erroneous instruction itself, it left the extent to which the entire trial is considered somewhat unclear. One, somewhat more restrictive view, is that the Court is permitted to consider the remainder of the charge and the trial record as they pertain to the issue on which the trial court erred in the instruction–in this case the issue of "identifications." Another possibility is that Cupp and its progeny call for an examination of the entire trial record, regardless of any direct connection to the issue on which the instruction erred. In this case, this ambiguity is largely academic. If the former, more restrictive reading of Cupp is correct, examination of the entire trial record would still be appropriate when the court proceeds to the harmless error analysis. See Neder v. United States, 527 U.S. 1, 8-10 (1999) (errors in jury instructions typically subject to harmless error analysis); see also United States v. Yakobowicz, 427 F.3d 144, 153-54 (2d Cir. 2005).

Even under the more restrictive reading of Cupp, it is clear that the jury instruction at issue did not rise to the level of a due process violation. As the Magistrate Judge noted, aside from the unbalanced marshaling of the evidence, the identification charge was otherwise proper, and the trial court emphasized the prosecution's burden to prove identity beyond a reasonable doubt. The court also stressed that responsibility for evaluating the identification evidence rested solely with the jury, and that the jury should examine all of the relevant proof with great care. Furthermore, although the trial court did not specifically mention that Psyllos and Kennedy failed to identify Persad when first shown a photo spread, it was a central theme of defense counsel's summation, making it very unlikely that the jury failed to consider that evidence.

Finally, even if one were to conclude that the corrective factors that are directly related to the erroneous charge are insufficient to overcome the error, it is still quite relevant–whether under the more expansive reading of <u>Cupp</u> or as a function of the harmless error analysis–that the overall evidence of Persad's guilt was compelling. For this reason, it was not inappropriate for the Magistrate Judge to consider the evidence that corroborated the identifications of Persad as the shooter, the fact that Persad fled the jurisdiction upon learning that the police sought to question him, and Persad's post-arrest statement in which he confessed to the crime. Because the Court agrees with the Magistrate Judge's factual analysis on the trial record as a whole, Persad's due process claim based on the erroneous jury instruction is denied.

II.     Conclusion

Accordingly, with the foregoing modifications, the Court adopts the Report and Recommendation of Magistrate Judge Gold. The petition for a writ of habeas corpus is denied. As this petition presents no "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated:     Brooklyn, New York
           January 30, 2008

Carol Bagley Amon
United States District Judge